FILED

2014 JUN 25  PM 4: 02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Larry Chae (SBN 268979)
lchae@slpattorney.com
Karen Nakon (SBN 278423)
knakon@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

Attorneys for Plaintiff William Parenteau

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CV14-04961 - CAS(MANx)

Case No.

WILLIAM PARENTEAU,
individually, and on behalf of a class
of similarly situated individuals,

Plaintiff,

vs.

GENERAL MOTORS, LLC,

Defendant.

**CLASS ACTION COMPLAINT FOR:**

(1) **Violations Of California Consumer Legal Remedies Act;**
(2) **Violations Of Unfair Business Practices Act;**
(3) **Fraud by Omission;**
(4) **Violation Of Magnuson-Moss Warranty Act;**
(5) **Breach Of Express Warranty under Cal. Com. Code § 2313;**
(6) **Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act**

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1.      Plaintiff WILLIAM PARENTEAU brings this action individually and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased certain defective Buick, Chevrolet, and GMC vehicles that were designed, manufactured, distributed, marketed, sold, and leased by Defendant General Motors, LLC ("GM" or "Defendant").

2.      Defendant designed, manufactured, distributed, marketed, sold, and leased vehicles equipped with 2.4L engines ("Class Vehicles" or "Vehicles")[1] to Plaintiff and the other Class Members.

3.      Since 2010, if not before, Defendant knew that the Class Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Class Vehicles' engine that cause them to be unable to properly utilize engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "oil consumption engine defect" or "defect").

4.      Motor oil functions as an essential lubricant for the moving parts in internal combustion engines.  The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact of those parts, thereby decreasing heat caused by friction and reducing wear.  Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine.  As a result, the Class Vehicles need the proper amount of engine oil in order for the engine and its related parts to function properly and safely.

---

[1] The Class Vehicles are any 2010-2013 GM vehicle equipped with a 2.4L engine, including but not limited to 2010-2013 Buick LaCrosse, 2011-2013 Buick Regal, 2010-2013 Chevrolet Equinox, or 2010-2013 GMC Terrain equipped with a 2.4L engine.

5.     Thus, the oil consumption engine defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.

6.     The oil consumption engine defect is therefore unreasonably dangerous to consumers because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving condition or speed, thereby exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accident and injury.

7.     In addition to these safety concerns, the oil consumption engine defect causes the Class Vehicles to consume unacceptably high amounts[2] of oil during normal and foreseeable usage, which requires Class Members to pay for unreasonably frequent oil changes and/or additions after very short driving distances, as well as costly engine repairs/replacements that can cost thousands of dollars in order to repair the defect.

8.     Despite its knowledge of the oil consumption engine defect from various internal sources since 2010, if not before, GM has not recalled the Class Vehicles to repair the defect, has not offered all of its customers suitable free engine repairs or replacements, and has not offered to reimburse all Class Vehicles owners and leaseholders who incurred costs relating to the oil consumption defect, including costs related to inspections/diagnosis, repairs, and unreasonably frequent oil changes and/or additions.

9.     Rather, GM has actively concealed and failed to disclose this defect, as well as its serious safety consequences, from Plaintiffs and the other Class Members at the time of purchase or lease and thereafter.  Despite its knowledge of the defect, when owners or lessees of the Class Vehicles specifically complain

---

[2] The rate of oil consumption for some Class Vehicles can be as high as 2 quarts per 400 miles driven.

1   to GM about excessive oil consumption, GM's policy is to first deny that there is
2   a known problem and to assert that losing excessive amounts of oil is normal.

3       10.    Prior to purchasing the Class Vehicles, Plaintiff and the other Class
4   Members did not know that the Class Vehicles suffered from an oil consumption
5   engine defect, and reasonably expected that their Class Vehicles would not
6   experience the defect during foreseeable and normal usage.  This undisclosed
7   defect has caused Plaintiff and Class Members to experience the oil consumption
8   defect throughout the life of the Class Vehicles, which includes use within the
9   warranty period.  Had Plaintiff and Class Members known about the oil
10  consumption engine defect at the time of sale or lease, as well as the associated
11  costs related to this defect and/or the safety hazards described herein, Plaintiff
12  and the Class Members would not have purchased the Class Vehicles or would
13  have paid less for them.

14      11.    As the number of complaints about the oil consumption engine
15  defect increased, instead of informing consumers about the defect and agreeing
16  to perform free engine repairs/replacement in order to fix the problem, GM, in or
17  about February 2013, sent "Customer Satisfaction"  letters to all Class Vehicle
18  owners informing them that "GM [has] recently introduced into production a
19  software update for the life monitor system[3] [which] will recommend more
20  frequent oil changes to support engine durability and overall operating costs."
21  Further, GM informed class vehicle owners that, "[a]t no-charge, your GM
22  dealer will update your vehicle with these same improvements."

23      12.    In other words, instead of disclosing the defect to consumers and
24  offering to fix the defect "at no charge" by performing engine
25  repairs/replacements for all Class vehicle owners, GM concealed the alleged

26

27      [3] GM's oil life monitoring system is a computer-based software algorithm
28  that determines when to change oil based on engine operating conditions.

CLASS ACTION COMPLAINT

safety defect and attempted to avoid the costly engine repairs that such a defect entails by performing a software update for the Class Vehicles in order to make oil change warning lights activate sooner, so that the Class Vehicles are required to undergo "more frequent oil changes."

13.     Plaintiff is informed and believes and based thereon alleges that GM instituted the customer satisfaction "more frequent oil changes" software update program in an attempt to delay the onset of the costly engine repairs that Class Members are substantially certain to experience as a result of the defect alleged herein, thus helping ensure that the defect occurs outside of GM's warranty so that GM can easily and unfairly shift financial responsibility for the defect to Class Members.

14.     However, as the number of complaints about the oil consumption engine defect continued to increase unabated, on or about September 10, 2013, Defendant quietly acknowledged the existence of the oil consumption engine defect to only its dealers in a Technical Service Bulletin ("TSB").[4]

15.     Although in the TSB Defendant acknowledges the existence of the oil consumption engine defect alleged herein and recommended certain engine repairs, Defendant arbitrarily and unfairly instructed its dealers not to perform the engine repairs identified in the TSB under warranty unless the consumer's vehicle is consuming more than 1 quart of oil per 2,000 miles of driving.

16.     Plaintiff is informed and believes and based thereon alleges that GM's requirement that there be more than one quart of oil consumption per 2,000 miles of driving before engine repairs are covered under warranty is

---

[4] Not surprisingly, unlike the customer satisfaction letters, the TSB was only provided to GM dealers (not class members) and unfairly required that class members' vehicles meet certain predetermined arbitrary conditions before engine repairs could be performed by GM dealers.

CLASS ACTION COMPLAINT

1   arbitrary and was designed to deny legitimate warranty claims and to limit its

2   own costs.

3      17. As a result of their reliance on Defendant's omissions and/or

4   misrepresentation, owners and/or lessees of the Class Vehicles have suffered

5   ascertainable loss of money, property, and/or loss in value of their Class

6   Vehicles.

7   <center>**THE PARTIES**</center>

8      18. Plaintiff William Parenteau is a California citizen who purchased a

9   2011 Chevrolet Equinox LT primarily for personal, family, or household

10  purposes.

11     19. Defendant General Motors, LLC is a Delaware Limited Liability

12  Company with its headquarters and principal place of business in the State of

13  Michigan.  Defendant does business in the state of California.  Defendant

14  designs, tests, manufactures, distributes, warrants, sells, and leases various

15  vehicles under several prominent brand names, including but not limited to

16  Chevrolet, Buick, GMC, GM, and Pontiac in this district and throughout the

17  United States.

18  <center>**JURISDICTION**</center>

19     20. This is a class action.

20     21. This Court has jurisdiction over this nationwide action under the

21  Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the

22  individual class members exceed the sum value of $5,000,000, exclusive of

23  interests and costs.

24     22. This Court has jurisdiction over Defendant because General Motors,

25  LLC, is registered to conduct business in California.  This Court also has

26  jurisdiction over Defendant because it has sufficient minimum contacts in

27  California, or otherwise intentionally avails itself of the markets within

28  California, through promotion, sales, marketing, and distribution of the Class

<center>5</center>

1    Vehicles in California, to render the exercise of jurisdiction by this Court proper

2    and necessary.

3          23.    Defendant, through its business of manufacturing, distributing,

4    selling, and leasing the Class Vehicles, has established sufficient contacts in this

5    district such that personal jurisdiction is appropriate.

6          24.    Defendant is deemed to reside in this district pursuant to 28 U.S.C. §

7    1391.

8          25.    Venue is proper, *inter alia*, in this District under 28 U.S.C. § 1391

9    and California Civil Code section 1780(d), because at least one Defendant

10   continuously conduct business in this district.  For example, Defendant maintains

11   its western region headquarters in Ventura County, California. Plaintiff's

12   counsel's Declaration, as may be required under California Civil Code section

13   1780(d), is attached as Exhibit 1.

14                        **FACTUAL ALLEGATIONS**

15         26.    For years, Defendant has designed, manufactured, distributed, sold,

16   and leased the Class Vehicles.  Upon information and belief, it has sold, directly

17   or indirectly through dealers and other retail outlets, hundreds of thousands of

18   Class Vehicles in California and nationwide.

19         27.    The Class Vehicles contain one or more design and/or

20   manufacturing defects, including but not limited to defects contained in the Class

21   Vehicles' engines that cause them to consume abnormally high amounts of oil.

22         28.    Plaintiff is informed and believes and based thereon alleges that

23   Defendant acquired its knowledge of the oil consumption engine defect since

24   2010, if not before, through sources not available to Class Members, including

25   but not limited to pre-release testing data; early consumer complaints about the

26   Class Vehicles and their oil consumption engine defect to Defendant and its

27   dealers; testing conducted in response to those complaints; aggregate data from

28   Defendant's dealers, including dealer repair orders and high parts sales data

and/or warranty reimbursement rates that are in the thousands of dollars for each Class Vehicle; and from other internal sources.

29.     Defendant has a duty to disclose the oil consumption engine defect and the associated out-of-pocket repair costs to Class Vehicle owners, among other reasons, because the defect poses an unreasonable safety hazard; because Defendant had and has exclusive knowledge or access to material facts about the Class Vehicles and their engines that were and are not known or reasonably discoverable by Plaintiff and the other Class Members; and because Defendant has actively concealed the oil consumption engine defect from its customers.

30.     Indeed, Plaintiff and class members reasonably expected that their Class Vehicles would not experience oil consumption engine defect during foreseeable and normal usage, including, but not limited to, the expectation that the Class Vehicles would not require unreasonably frequent oil changes/additions after very short driving distances and that the Class Vehicles would not suffer from a dangerous safety defect that could cause the Class Vehicles to unexpectedly seize during operation, thereby causing the potential for accidents and injuries.   These are the reasonable and objective expectations of consumers.

31.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the oil consumption engine defect.  Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread.  The complaints also indicate Defendant's awareness of the defect and its potential dangers (note that spelling and grammar mistakes remain as found in the original):

- NHTSA COMPLAINT: [2010 CHEVROLET EQUINOX] AFTER ABOUT A YEAR OF OWNING THIS VEHICLE, WE HAVE EXPERIENCED SEVERAL ISSUES WITH ENGINE RELATED PROBLEMS STARTING IN 2011 TO CURRENT RECENT ISSUE ON 30/2014. WE HAVE BEEN TO THE DEALER FOR SEVERAL "REPAIRS" AND HAVE CONTINUED TO HAVE ADDITIONAL

7

PROBLEMS. ON SEVERAL OCCASIONS THE VEHICLE HAS STALLED WHILE DRIVING, ENGINE SHIFTS HARD/DELAYED WHILE DRIVING, EXCESSIVE OIL LOSS BETWEEN OIL CHANGES. OIL IS CHANGED AND ADDED BEFORE EVERY 3,000 MILES OR SOONER IN RECENT MONTHS DUE TO LOW OIL AND ENGINE MAKING "KNOCKING" SOUND. TOOK VEHICLE TO DEALER FOR RECENT NOISE AND ENGINE LIGHT. THEY ARE STATING IT NEEDS ENGINE WORK DONE FOR OIL BEING "BURNED" IN ENGINE THROUGH THE EXHAUST IN EXCESS OF $1600. LISTED SEVERAL ITEMS THAT NEED REPAIR IN CONJUNCTION WITH THIS ISSUE.

- NHTSA COMPLAINT: SINCE THE PURCHASE OF MY [2010] CHEVY EQUINOX I HAVE HAD ENGINE TROUBLE RELATED TO THE OIL SYSTEM. FOR A PERIOD OF TIME I WAS INITIALLY GIVEN THE RUN AROUND IN REGARDS TO A SOLUTION. THE ENGINE NOISE MADE IT CLEAR TO ME THAT MY CAR NEEDED SOME TYPE OF REPAIR. MY PERSISTENCE ENABLED ME TO FINALLY HAVE THE PROBLEM SOLVED. I CANNOT BE MORE SPECIFIC ABOUT THAT EVENT, BUT KEEPING THAT INCIDENT IN MIND LEADS TO THE NEXT. I LATER BEGAN TO HAVE PROBLEMS WITH OIL CONSUMPTION (SEVERAL MONTHS DOWN THE ROAD). DURING PERIODS IN BETWEEN OIL CHANGES I BEGAN TO PUT MORE AND MORE OIL IN MY CAR. THIS DIDN'T MAKE SINCE MY TRAVEL WAS LOCAL AND NOT MUCH. ( I HAVE BEEN OUT OF WORK SINCE LAST JUNE 2013). THAT TIME I DECIDED OR I WILL SAY INSISTED THE DEALER LOOK FURTHER INTO THE PROBLEM WHEN IT WAS THREE WEEKS AFTER AN OIL CHANGE AND IT WAS DOWN ALMOST FIVE QUARTS OF OIL. I GOT A LECHER ABOUT THE DAMAGE IT WOULD HAVE CAUSED. TO THE POINT OF THE PROBLEM WITH ALL THIS. I READ OTHER LETTERS OF COMPLAINTS ON THE WEBSITE IN REGARD TO OTHER ENGINE OR OIL RELATED ISSUES ON THE CHEVY EQUINOX. IT SEEMS MORE THAN APPARENT THAT THIS SHOULD BE LOOKED INTO PRIOR TO ACCIDENT, INJURY OR DEATH. EACH PROBLEM OR COMPLAINT ALSO HAD A NUMBER OF HOW MANY OF EACH WERE RECORDED. I WOULD HOPE THAT IT WOULDN'T TAKE FOR ME TO INJURE MYSELF OR BE JUST ANOTHER TRAGIC DEATH RELATED TO THE BIG CAR INDUSTRIES. TROUBLE SHOOTERS GET PAID BIG MONEY TO PREVENT SUCH TRAVESTIES. I WOULD THEN EXPECT THAT THESE GLITCHES WOULD BE WORKED OUT TO THE BENEFIT OF THE SMALL PEOPLE PAYING BIG MONEY FOR VEHICLES THAT HELP THEM MAKE IT ON THE JOURNEY TO A

BIGGER A BETTER WAY OF LIFE. I HOPE SOMEONE SITTING IN HIS OR HER CORPORATE OFFICE DOES MORE THAN JUST BRUSH THIS ASIDE AND POST IT WITH THE OTHER LETTER OF COMPLAINT.

- NHTSA COMPLAINT: I HAVE EXPERIENCED NOTHING BUT ISSUES WITH MY 2010 [CHEVROLET] EQUINOX. IT HAS BEEN IN THE SHOP MANY TIMES REGARDING THE OIL LEVEL BEING LOW AND A LOUD NOISE AND TRANSMISSION GETTING STUCK AND SLIPPING. ALSO EXPERIENCING GAS SMELL WHILE I'M DRIVING OR WHEN I COME TO A COMPLETE STOP. ALSO IT'S NOT NORMAL FOR THE ENGINE TO LOSE 3 QUARTS OF OIL OUT OF 5QTS WITHIN 3000 MILES. STARTED NOTICING THE LOST OF OIL MAY OF 2013. TOOK IT TO THE SHOP AND THEY REPLACE THE ENGINE AND OTHER PARTS THAT GO ALONG WITH THAT REPAIR. JULY OF 2013 SAME PROBLEM OCCUR AGAIN, LOST OF OIL AGAIN, AND THEN THEY REPLACE FRONT DRIVE AXLE INNER SHAFT SEAL. ALSO TOOK THE CAR BACK TO THE SHOP FOR OIL LOST ON DEC.31, 2013 FOR LOSING 3 QTS OIL OUT OF 5QTS. THEY TELL US THAT THERE IS NOTHING WRONG. THEY SAID THEY INSPECTED IT FOR OIL LEAKS, BUT IF THEY WOULD OF CHECK THE OIL DIP STICK THEY WOULD HAVE SEEN THE LOST OF 3QTS OF OIL. ALSO I HAVE PICTURES THAT I TOOK OF THE OIL DIP STICK SHOWING ONLY 2QTS OF OIL ON DEC.17 2013. ALSO WE HAVE CONTACTED GM AND NO HELP FROM THEM. I'VE INVESTIGATED THIS PROBLEM I LEARNED THAT I?M NOT THE ONLY ONE EXPERIENCING THE SAME PROBLEM ACROSS THE UNITED STATES. ALSO ON THE INVOICE THAT I RECEIVED THEY DID NOT DO AN OIL CONSUMPTION TEST WHICH INVOLVES MORE THAN JUST CHECKING FOR LEAKS? SEEM LIKE THERE NOT FOLLOWING THE SERVICE PROCEDURES. IT'S OBVIOUSLY AN INTERNAL DEFECT IN THE 2.4 LITER ENGINE THAT CAUSES IT TO BURN THAT MUCH OIL. ALSO I HAVE ALL MY PAPERS WHEN I TOOK IT TO THE SHOP. ALSO THEY GAVE US A COPY OF THE MULTI-POINT INSPECTION WHERE IT INDICATES THE FUEL SYSTEM, ENGINE, TRANSMISSION, DRIVE AXLE; TRANSFER CASE REQUIRES ATTENTION SOON, WOW YOU THINK THAT'S WHY MY TRANSMISSION IS SLIPPING. *TR

- NHTSA COMPLAINT: AT ABOUT 40,000 MILES NOTICED THAT VEHICLE WAS LOOSING OR USING OIL. CARRIED TO THE SHOP AND NO PROBLEM COULD BE FOUND. AT 50,000 MILES ENGINE STARTED KNOCKING AND ENGINE LIGHT CAME

9

ON. CARRIED TO THE SHOP, FOUND THAT TIMING CHAIN BRACKET HAD BROKEN. REPLACED TIMING CHAIN, BRACKET , AND GASKETS. TWO MONTHS LATER CHECK ENGINE LIGHT APPEARS AGAIN. TAKE IT TO SHOP. RAN DIE THROUGH ENGINE TO FIND OUT WHERE OIL LOSS IS , CHECKED TIMING CHAIN AGAIN, CHANGED OIL, CHECKED FUEL PUMP, READING FOR CHECK ENGINE LIGHT WAS O2 SENSOR BUT NOTHING WAS DONE ABOUT IT. IT'S BEEN THREE WEEKS AND CHECK ENGINE LIGHT IS ON AGAIN. CAR COMPUTER FIRST SAYED STABILIZER BAR NEEDED CHECKING. GOT THAT LIGHT OFF AND CAR WILL AT LEAST GO OVER 30MILES PER HOUR BUT CHECK ENGINE LIGHT IS STILL ON. GOT TO CARRY IT BACK TO THE GARAGE. SOMETHING REALLY NEEDS TO BE DONE FOR THE CONSUMERS THAT OWN A 2010 [CHEVROLET] EQUINOX. THIS IS JUST RIDICULOUS. *TR

- NHTSA COMPLAINT: [2010 CHEVROLET EQUINOX] NO OIL ON THE DIPSTICK AFTER 3 MONTHS AND 3000 MILES SINCE THEY REPLACED MY DRIVE CHAIN AND ADDED OIL I EXPERIENCED NO HEAT AND TRANSMISSION IRREGULARITY. ADDED 4 QTS OF OIL AND CALLED CHEVY DEALER. TOOK IT IN AND THEY ARE REPLACING THE RINGS AND VALVES WHICH WERE LEAKING OIL INTO THE CRANKCASE AND I WAS BURNING THE OIL. IT WILL TAKE A WEEK TO FIX. THEY GAVE ME A FREE RENTAL CAR. I AM CONCERNED THAT THIS MAY HAVE CAUSED SOME DAMAGE TO THE ENGINE.

- NHTSA COMPLAINT: [2010 CHEVROLET EQUINOX] TOOK A ROAD TRIP AND THE ENGINE WAS MAKING NOISE HALF WAY THROUGH. CHECKED OIL DIPSTICK WHEN WE ARRIVED HOME AND NO OIL REGISTERED ON DIPSTICK! THE 2010 CHEVY EQUINOX IS A LEMON!! STAY AWAY *TR

- NHTSA COMPLAINT: I PURCHASED A 2010 CHEVY EQUINOX ON 4/1/2013. I HAVE SINCE HAD A FEW ISSUES WITH THE VEHICLE. I HAD THE TIMING BELT REPLACED DUE TO KNOCKING IN THE ENGINE. I THANK THE GOOD LORD THAT IT WAS UNDER A RECALL. I HAVE ALSO BEEN EXPERIENCING OIL LOSS. I HAVE MY OIL CHANGED ON A REGULAR BASIS AND IT HAS BEEN USING OIL BETWEEN THOSE CHANGES. THE LAST TIME I HAD IT CHANGED, I WAS TOLD THAT THERE WAS NO OIL ON THE DIP STICK WHEN THEY CHECKED IT PRIOR TO DOING THE CHANGE. I HAVE ALSO GONE WITHOUT A DEFROSTER AS WELL. HAVEN'T THOUGHT MUCH ABOUT IT SINCE

10

I HAVEN'T NEEDED IT YET BUT NOW THE WEATHER IS CHANGING AND I KNOW I AM GOING TO NEED IT REAL SOON. BUT GUESS WHAT. EVEN THOUGH THERE IS A RECALL ON THAT, MINE DOESN'T FALL UNDER THAT RECALL. I F THERE ARE SO MANY PEOPLE HAVING THE SAME ISSUE, YOU WOULD THINK IT WOULD BE COVERED NO MATTER. IT ISN'T MY FAULT THAT IT IS NOT WORKING PROPERLY. SO, RIGHT BEFORE CHRISTMAS I AM GOING TO HAVE TO SHELL OUT OVER $400 TO GET THIS FIXED SO THAT I WILL BE ABLE TO SEE OUT OF MY FRONT WINDSHIELD. I GUESS IT IS MY FAULT THAT I HAVE WAITED TILL NOW TO WORRY WITH IT. I AM ALSO HAVING ISSUES WITH MY DASH LIGHTS GOING IN AND OUT AND MY AIR BAG LIGHT STAYS ON. THERE SHOULD NOT BE THAT MANY ISSUES WITH ONE VEHICLE. *TR

- NHTSA COMPLAINT: MY 2010 CHEVY EQUINOX (PURCHASED 05/2010) HAS CONTINUOUSLY HAD ISSUES WHEN IDLING OR AT LOW SPEEDS IN THE CITY OR IN HEAVY HIGHWAY TRAFFIC, SINCE ABOUT A YEAR AFTER I PURCHASED IT. SOMETIMES THIS WILL CAUSE THE CAR TO STALL. THIS HAS BEEN PARTICULARLY SCARY AND PROBLEMATIC ON THE HIGHWAY IN RUSH HOUR TRAFFIC AND ON THE BAY BRIDGE DURING RUSH HOUR TRAFFIC. WHAT IS PARTICULARLY FRUSTRATING IS WHAT I AM TOLD BY THE DEALERSHIP SERVICE TEAM - "IT'S BECAUSE YOU'RE LOW ON OIL." WHEN I EXPLAIN THAT I JUST HAD AN OIL CHANGE 1,500 MILES AGO AND TOPPED OFF THE OIL A WEEK BEFORE, THEY SAID, "WELL THIS CAR BURNS A LOT OF OIL, AND YOU WERE DOWN A QUART. YOU SHOULD JUST CHECK IT EVERY WEEK AND KEEP TOPPING IT OFF." NO CONCERN FOR THE FACT THAT I AM DOING THIS, AND IT IS STALLING. NO CONCERN FOR THE FACT THAT THIS CAR IS 3 YEARS OLD AND BURNING THAT MUCH OIL. WHEN I ASK WHAT TYPE OF ENGINE PROBLEM WOULD RESULT IN THIS TYPE OF OIL CONSUMPTION, THEY QUICKLY CHANGE THE SUBJECT AND SAY THEY HAVE FOUND "NOTHING WRONG" OR THAT THEY ARE JUST "GOING BY WHAT GM SAYS TO DO, SINCE WE ARE ONLY THE SERVICE TEAM, NOT THE MANUFACTURER." AT THIS POINT, I BRING MY CAR IN ANYWHERE FROM ONCE EVERY OTHER MONTH TO MULTIPLE TIMES PER MONTH. SOMETIMES THE OIL IS LOW; SOMETIMES THE CHECK ENGINE LIGHT IS ON. JUST LAST WEEK (10/15), AFTER I STARTED A CLAIM WITH GM AND TOLD THE SERVICE TEAM THAT I WAS FILING A

11

COMPLAINT, THEY FINALLY AGREED TO RUN AN OIL CONSUMPTION TEST. WE DID NOT GET THAT FAR, THOUGH, AS MY CAR HAS BEEN ROUGH IDLING ALL WEEK AND MY CHECK ENGINE LIGHT IS BACK ON - IT'S BACK WITH THE SERVICE FOLKS... JUST 5 DAYS AFTER BEING THERE LAST. *TR

- NHTSA COMPLAINT: [2010 CHEVROLET EQUINOX] PURCHASED 4/2010 1 AT A RED LIGHT, CAR IDLED REALLY ROUGH, THEN ALL OF THE DASH LIGHTS CAME ON. I DROVE STRAIGHT TO THE DEALERSHIP. THEY CHECKED IT OUT AND SAID I NEEDED A NEW FUEL PUMP. I HAD ABOUT 47,000 MILES. 2. OIL CONSUMPTION - THE FIRST TIME THIS HAPPENED I WAS HEARING A FUNNY NOISE WHEN I TURNED LEFT COMING FROM THE ENGINE. MY BOYFRIEND CHECKED THE OIL THE NEXT MORNING TO FIND NO OIL ON THE DIPSTICK. WE PUT IN 2 QTS THEN WHEN THE DEALER SHIP OPENED I TOOK IT IN. THEY TOLD ME THEY COULD NOT FIND ANY INTERNAL OR EXTERNAL LEAKS SO BRING IN WEEKLY FOR OIL CONSUMPTION TEST (I WAS ABOUT 1500 MILES SINCE MY OIL CHANGE THAT WAS DONE AT THE SAME TIME THE FUEL PUMP WAS REPLACED) DROVE OUT OF TOWN TO VISIT FAMILY (ABOUT 2000 MILES AFTER OIL CHANGE) AFTER DRIVING 200 MILES HEARD THE NOISE AGAIN CHECKED THE OIL.......2 QTS LOW. ADDED OIL AND TOOK TO LOCAL DEALERSHIP. NO PROBLEMS FOUND RELATED TO OIL, BUT DID FIND ANOTHER ALERT THAT NEEDED TO BE COMPLETED WHEN I GOT HOME RELATED TO THE WATER PUMP TENSIONER. GM CUSTOMER SERVICE AGAIN , BUT ONLY WAS TOLD TO WAIT UNTIL MY NEXT SCHEDULED OIL CHANGE AND START CONSUMPTION TESTS AGAIN. 3. I POD JACK - WORKED FINE FOR THE FIRST 2 YEARS, BUT THEN WOULD CAUSE ALL CENTER CONSOLE LIGHTS TO GO OUT, COULD NOT OPERATE RADIO OR A/C. 4. STALLING - I HAVE ONLY HAD THIS PROBLEM ONCE BUT IT WAS AS I WAS TURNING LEFT ACROSS 3 LANES OF TRAFFIC! 5. JERKY TRANSMISSION - THE FIRST TIME THIS ISSUE HAPPENED IT JERKED SO HARD I THOUGHT I HIT SOMETHING. TOOK IT TO THE DEALERSHIP AND WAS TOLD, LIKE OTHERS IT WAS THE TRANSMISSION "LEARNING" ME. THE TRANSMISSION CODES WERE UPDATED AND PROBLEM ONLY OCCURS OCCASIONALLY 6. DRIVERS SEAT LUMBAR SUPPORT AIRBLADDER - HAS POPPED AND HAD TO BE REPLACED TWO TIMES. *TR

CLASS ACTION COMPLAINT

- <u>NHTSA COMPLAINT</u>: [2010 CHEVROLET EQUINOX] MY CHECK ENGINE LIGHT CAME ON. I BROUGHT MY CAR TO AN AUTOPARTS STORE TO GET THE CODE. UPON RUNNING THE CODE IT WAS DISCOVERED THE OIL WAS LOW IN THE CAR. THE MECHANIC PUT IT IN 3 QUARTS OF OIL. I HAD MY OIL CHANGED IN OCTOBER AND HAD JUST PUT 3000 MILES ON THE CAR. THE NEXT DAY THE CHECK ENGINE LIGHT CAME ON AGAIN AND THE CAR WAS 1 QUART OF OIL LOW. I CALLED THE CHEVY DEALER AND GAVE THEM THE CODE P00014. THEY SAID IT WAS MY CAMSHAFT AND TO BRING IT IN FOR WARRANTY WORK. UPON DROP OFF THEY SAID THEY COULD SMELL OIL BURNING AND HEARD A KNOCKING IN THE ENGINE. THEY SAID THE OIL IN MY CAR WAS VERY BLACK/DIRTY AND LOW WHEN THEY RECEIVED IT. THEY TOLD ME TO MAKE SURE I CHANGE MY OIL REGULARLY AND NOT FOLLOW THE "OIL LIFE" LIGHT IN THE CAR. THEY DID AN OIL CHANGE AND SAID THE CAR WAS RUNNING FINE. I WAS INFORMED TO KEEP AN EYE ON THE OIL SO THEY COULD DO A CONSUMPTION TEST. A WEEK LATER THE SAME CHECK ENGINE CODE CAME ON IN MY CAR. I BROUGHT IT BACK TO THE DEALERSHIP. THEY REPLACED CHAINS AND ACTUATORS IN THE ENGINE. I GOT MY CAR BACK, WATCHED THE OIL AND DROVE 1000 MILES. AT THAT POINT MY CAR WAS 1.3 QUARTS OF OIL LOW. THE DEALERSHIP DOCUMENTED IT AND SENT ME ON. I DROVE 700 MILES AND WAS 3/4 A QUART OF OIL LOW. IT ALSO HAD THAT KNOCKING NOISE IN THE ENGINE AGAIN. THE DEALERSHIP TOOK MY CAR BACK AND CALLED GM. THEY WERE TOLD LOOK FOR MARKINGS IN THE ENGINE. THEY ENDED UP REPLACING MY ENTIRE ENGINE AND THE FUEL PUMP SYSTEM DUE TO THE MARKINGS THEY FOUND. GM SAID THESE PROBLEMS WERE LINKED TO ISSUES IN ENGINES WITH THESE MARKS. MY SITUATION HAS BEEN FIXED FOR NOW BUT I WANTED TO MAKE MY PROBLEM KNOWN FOR OTHERS WHO HAVE NOT HAD IT FIXED. *TR

- <u>NHTSA COMPLAINT</u>: [2010 CHEVROLET EQUINOX] START-UP NOISE COMING FROM ENGINE, SOUNDS VERY SIMILAR TO RUNNING A DIESEL. VEHICLE IS EXPERIENCING ROUGH IDLE, OR NEAR STALLING/COMPLETE STALL OUT AT A LOW THROTTLE OPENING. CHECK ENGINE LIGHT CAME ON THROWING CODES P0014 AND P0011. VEHICLE IS ALSO BURNING THROUGH AT LEAST 2 QUARTS OF OIL EACH WEEK AND NOT RECEIVING THE EXPECTED AMOUNT OF GAS MILEAGE (ONLY

13

ABOUT 1/2). THESE ISSUES ARE VERY SIMILAR TO THOSE RECORDED FOR RECALL 11195A ON THE 2011 EQUINOX MODEL WITH THE 2.4L ENGINE. MY 2010 IS NO LONGER COVERED UNDER GM'S POWERTRAIN WARRANTY AND WOULD LIKE TO SEE THIS RECALL EXTENDED FOR THE 2010 MODELS AS I AM NOT THE ONLY ONE EXPERIENCING THESE PROBLEMS. HTTP://CHEVROLETFORUM.COM/FORUM/EQUINOX -23/YET-ANOTHER-2010-EQUINOX-BURNING-OIL-STALLING-51192/ HTTP://WWW.GMINSIDENEWS.COM/FORUMS/F53/20 11-EQUINOX-COLD-START-ENGINE-NOISE-102947/INDEX4.HTML. *TR

- NHTSA COMPLAINT: I HAD BEEN HAVING OIL CONSUMPTION PROBLEMS, LIKE MANY OTHER OWNERS OF 2010 [CHEVROLET] EQUINOXES AND WAS UNDERGOING AN OIL CONSUMPTION TEST. WAS DRIVING ON I-81S ON A 500 MILE TRIP. WHEN I STARTED THE CAR AFTER STOPPING FOR GAS, IT IDLED VERY ROUGHLY. FOOLISHLY, I GOT BACK ON THE INTERSTATE, THINKING THAT MAYBE A HIGHER SPEED WOULD HELP. THE CAR WOULD NOT GET UP TO A SAFE SPEED AND COMPLETELY STALLED OUT ABOUT A QUARTER MILE FROM THE EXIT, LEAVING ME STRANDED (BY MYSELF) 150 MILES FROM MY DESTINATION. WAS TOWED 70 MILES TO A DEALERSHIP WHO REPLACED THE TIMING CHAIN, TENSIONER AND FUEL PUMP. THIS DEALER STATED THE PROBLEM WAS DUE TO LOW OIL LEVEL AS WELL AS DIRTY OIL. I INCURRED AN UNEXPECTED $1200 BILL AND WAS WITHOUT MY CAR FOR A WEEK. MY HOME DEALERSHIP REPLACED MY ENGINE 2 WEEKS AGO AND I RECEIVED REIMBURSEMENT FOR THE REPAIR BILL. I AM PLEASED, PRESENTLY, WITH THE RESPONSE FROM GM, BUT IT REQUIRED PERSISTENCE. ALTHOUGH I HAVE HAD MY PRESENT PROBLEM RECTIFIED, I'M REPORTING THIS PROBLEM AS MANY, MANY OTHERS HAVE BEEN EXPERIENCING THIS SAME PROBLEM WITH VARYING RESPONSES FROM GM. I'VE ALSO EXPERIENCED SOME SHIFTING PROBLEMS AS WELL, BUT THE ENGINE PROBLEM TOOK PRECEDENCE, SO I'M WAITING TO SEE IF THE TRANSMISSION PROBLEM CONTINUES! *TR

- NHTSA COMPLAINT: TL* THE CONTACT OWNS A 2010 CHEVROLET EQUINOX. THE CONTACT STATED THAT THE VEHICLE WAS ABNORMALLY CONSUMING TWO QUARTS OF OIL PER MONTH. THE CONTACT TOOK THE VEHICLE TO THE DEALER WHERE THE OIL RINGS WERE REPLACED.

14

THE DEALER ASKED THE CONTACT TO WAIT UNTIL THEIR NEXT OIL CHANGE TO SEE IF THE VEHICLE WAS STILL CONSUMING OIL. THE CONTACT STATED THAT THE VEHICLE WAS OUT OF OIL LESS THEN 500 MILES AFTER THE OIL RINGS WERE REPLACED. THE CONTACT ALSO STATED THAT THE OIL WARNING LIGHT DID NOT ILLUMINATE TO INDICATE THAT THAT THE OIL LEVEL WAS LOW. THE FAILURE MILEAGE WAS 30,000 AND THE CURRENT MILEAGE WAS 60,000.

- NHTSA COMPLAINT: [2010 CHEVROLET EQUINOX] VEHICLE BURNS LARGE QUANTITIES OF OIL, OFTEN IN SHORT PERIODS OF TIME. (WE WILL CHECK OIL, IT'S FINE, AND THEN A FEW DAYS LATER WE'VE BURNED TWO QUARTS.) THIS REQUIRES US TO PULL OVER RAPIDLY AND FIND NEW OIL TO PREVENT ENGINE FAILURE, MAKING IT A MAJOR SAFETY HAZARD. WE'VE BURNED 1 TO 2 QUARTS OF OIL EVERY 1,000 TO 1,500 MILES PRETTY CONSISTENTLY SINCE MARCH, WHEN WE FIRST DISCOVERED WE WERE DOWN 3 QUARTS. *TR

- NHTSA COMPLAINT: BOUGHT THE [2011 CHEVROLET] EQUINOX NEW IN APRIL 11 FOR MY DAUGHTER. HAD IT ABOUT 6 +/- MONTHS AND STARTED HAVING PROBLEMS WITH IT. IT WOULD LOOSE POWER ALL OF A SUDDEN AND ENGINE LIGHT WOULD COME ON AND STEERING WOULD BECOME EXTEMELY HARD TO DO. HAVE TAKEN IT TO THE DEALERSHIP MANY MANY TIMES SINCE THEN ALL FOR THE SAME REASONS. THE VEHICLE STALLS WHILE DRIVING AND LOOSES POWER. I HAVE BEEN LUCKY SO FAR WITH NO ACCIDENTS. I AM HAVING TO TAKE IT TO THE DEALER AGAIN FOR THE SAME REASONS. NOW THERE IS A PROBLEM WITH THE VEHICLE USING A LOT OF OIL. THE DEALERSHIP HAS REPLACED THE TRANSMISSION ONCE, REPLACED ALOT OF FUSES AND WORKED ON THE ENGINE SEVERAL TIMES. THERE ARE STILL PROBLEMS. I THINK, GM NEEDS TO DO SOMETHING ABOUT FIXING THIS VEHICLE AND ALL THE OTHERS THAT ARE HAVING THE SAME PROBLEMS. FROM WHAT I HAVE READ ON THE INTERNET, THERE ARE A LOT OF OWNERS OUT THERE HAVING THE SAME PROBLEMS. NHTSA, HOW MANY COMPLAINTS DOES IT TAKE TO HAVE A RECALL DONE...?

- NHTSA COMPLAINT: [2011 CHEVROLET EQUINOX] THESE VEHICLES NEED TO BE RECALLED BY GM - THEY HAVE A SERIOUS ENGINE DEFECT WHICH

15

CAUSE EXCESSIVE OIL CONSUMPTION AND DANGEROUS PERFORMANCE OF THE VEHICLE. THE VEHICLE WILL STALL AT ANY GIVEN TIME OR NOT RESPOND SO PULLING OUT INTO TRAFFIC IS EXTREMELY DANGEROUS. THEY ARE IN THE PROCESS OF REPLACING MY ENGINE HOWEVER AFTER MUCH RESEARCH IN MOST CASES THIS DOES NOT FIX THE PROBLEM. I AM FORTUNATE TO HAVE A DEALER THAT IS RESPONSIVE TO MY COMPLAINTS - HOWEVER THAT IS NOT THE CASE FOR MOST. THERE ARE PEOPLE OUT THERE FIGHTING TO HAVE THE SITUATION RESOLVED BUT HAVE MADE NO PROGRESS. I REQUESTED GM TERMINATE MY LEASE AS I WILL NOT PLACE MY CHILDREN IN THIS VEHICLE ANY LONGER, THEY REFUSED. I HAVE A LIGHT AT THE END OF MY TUNNEL AS I LEASED, BUT SO MANY PEOPLE WHO PURCHASED THESE VEHICLES DO NOT AS THE PROBLEM IS SO WELL KNOW AND DOCUMENTED THEY ARE UNABLE TO TRADE THEM IN AT A DECENT VALUE. IT IS A SIN THAT THEY ARE NOT FORCED TO RECALL THESE UNSAFE VEHICLES. I AM ASSUMING THEY ARE WAITING FOR A FATALITY. I HAVE BEEN DENIED THAT ABILITY TO SPEAK WITH A DISTRICT MANAGER AT GM AS THE RESOLUTION PROVIDED BY THE LOWER LEVEL EMPLOYEES WAS NOT ACCEPTABLE. AT THIS POINT I AM NOT SURE WHERE TO TURN. I WILL BE PLACING THE VEHICLE IN MY GARAGE ONCE THE ENGINE IS REPLACED AND BUYING ANOTHER VEHICLE AS TO NOT ENDANGER MYSELF OR OTHERS. *TR

- NHTSA COMPLAINT: THE 2012 CHEVY EQUINOX STALL CONSTANTLY BELOW 30 MPH. IT STALLS AT LEAST 2 TO 3 TIMES TRYING TO BACK OUT OF GARAGE TO MOVE IT 10 FEET. THE IDLE STARTES OFF SMOOTH BUT WITHIN 10 SECONDS THE EQUINOX STARTS IDLING ROUGH AND JERKING, THEN IT STALLS. WHEN STOPPED AT STOP LIGHT THE EQUINOX JERKS BACK AND FORTH, WHEN I GIVE IT GAS TO GO, THE EQUINOX JERKS FOWARD AND USUALLY DIES ON ME. IT BURNS A LARGE AMOUT OF GAS AND OIL, I HAVE TO REFILL THE OIL UP AT LEAST ONCE A WEEK. I HAVE CHANGED THE OIL MYSELF AND FOUND THE OIL IS SATURATED WITH METAL FILINGS. THE CHECK ENGINE LIGHT COMES ON AND OFF REPEATEDLY. I HAVE ALREADY REPLACED THE BATTERY TWICE BECAUSE OF A DEAD CELL. I HAVE REPLACED THE FRONT RIGHT TIRE DUE TO A BLOW-OUT AT 24,000 MILES AND DEALERSHIP REFUSED TO REPLACE IT, SAYING I HIT SOMETHING AND IT COULD NOT HAVE BLOWN OUT. THE ENTIRE NAVIGATION SYSTEM IN OUT

AND THE LIGHTS FLICKER IN THE CUP HOLDERS. THE TIRE PRESSURE SENSORS WHEN OUT FOR AT LEAST 5 DAYS AND IT STARTED WORKING AGAIN WITH NO REPAIR OF THE SYSTEM. THIS IS NOT A SAFE VEHICLE TO DRIVE CONSIDERING, I DON'T KNOW WHEN IT IS GOING TO STALL DRINING DOWN THE HIGHWAY. A RECALL IS MANDATORY FOR FULL REPLACEMENT!!!!

- NHTSA COMPLAINT: [2011 BUICK REGAL] I HAVE HAD TO TURN MY VEHICLE INTO THE SHOP ON MULTIPLE OCCASIONS REGARDING MY VEHICLE BREAKING DOWN IN THE MIDDLE OF TRAFFIC, THE CARD BASICALLY RUNS LIKE A TOY! WITHIN MONTHS OF PURCHASING THIS PRECERTIFIED ONE OWNER VEHICLE, THE OIL LIGHT SUPPOSEDLY WAS RECALLED AND DID NOT FUNCTION-CAR HAD ABSOLUTELY NO OIL. I CONTINUED TO RECEIVED BUICK HANDLED MAINTENANCE AND STILL EXPERIENCING ISSUES. THE VEHICLE STILL LOOSES OIL WITHIN RANGE OF NOT NEEDING A CHANGE. THE CARD JERKS AND WHEN APPROACHING STOPS AND WILL COMPLETELY CUT OFF. I RECENTLY GOT MY CAR BACK AFTER TWO WEEKS OF REPAIRS REPLACING OF ENGINE PISTONS, BELTS SO ON AND SO FORTH HOWEVER TODAY AFTER COMING TO A STOP AT A STOP LIGHT, THE CAR BEGAN TO JERK AND SHAKE AND THE DIED. THE LIGHT TURN GREEN AND I WAS IN FRONT OF A SCHOOL BUS! I CANNOT BE ON THE ROAD AND MY CAR CUTTING OFF IN TRAFFIC AFTER MULTIPLE REPAIRS! THIS WAS MY FIRST CAR PURCHASE AND I AM MORE THAN DISAPPOINTED. ONCE AGAIN I HAVE TO TAKE MY CAR IN TO SEE WHY THE ISSUE CONTINUES.

- NHTSA COMPLAINT: I PURCHASED MY 2010 GMC TERRAIN IN MAY 2013. AFTER A FEW WEEKS OF HAVING THE TRUCK. I HEARD A RATTLING NOISE. I TOOK IT BACK TO WHERE I PURCHASED IT AND THEY SAID I WAS OUT OF OIL. FROM MAY - OCT. I HAVE HAD TO HAVE 4 OIL CHANGES WHICH MY MILEAGE WAS NOW 52.000. THE SERVICE LIGHT NEVER CAME ON BUT COULD HEAR A RATTLING SOUND. THEY RECENTLY DID A CONSUMPTION TEST ON THE TRUCK AND THEY SAY EVERYTHING LOOKS FINE. NOW WHEN I STOP AT A LIGHT OR STOP SIGN, MY TRUCK SHAKES AS THOUGH IT IS GOING TO TURN OFF. IT DOES THIS RANDOMLY. OF COURSE THEY COULD NOT DUPLICATE IT WHEN THEY TEST DROVE IT. MY LIGHT DOES NOT ALWAYS ILLUMINATE AND MY SPEAKER ON THE DRIVER SIDE WILL BE STATIC WHEN I START UP THE TRUCK. NEEDLESS TO SAY

17

, HAVING THE TRUCK FOR ONLY A FEW MONTHS AND SEEING THIS MANY ISSUES IS A HUGE CONCERN, AFTER READING ALL THE COMPLAINTS I AM TRUELY CONCERNED THIS IS NOT THE TRUCK THAT IS GOING TO LAST VERY LONG, EVEN THOUGH I PAID GOOD MONEY FOR IT. VERY DISAPPOINTING. I HAVE TALKED TO MANY PEOPLE WHO HAVE HAD TO HAVE THE ENGINE REPLACED. INSTEAD OF GOING THROUGH ALL THE REPAIRS THAT SEEMS LIKE THE IDEAL SOLUTION. ITS ODD WHEN YOU READ THE OTHER COMPLAINTS, IT SEEMS EVEN GMC DOESN'T KNOW HOW TO FIX THEIR OWN ISSUES OR DON'T KNOW WHAT IS CAUSING THESE PROBLEMS. I READ THAT GMC TERRAINS HAVE HAD 131 BULLETINS WOW.

- NHTSA COMPLAINT: TL* THE CONTACT OWNS A 2010 GMC TERRAIN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50 MPH, THE VEHICLE DECELERATED INDEPENDENTLY TO 30 MPH. THE FAILURE OCCURRED INTERMITTENTLY. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER ELEVEN TIMES IN RELATION TO THE PROBLEM. THE FUEL INJECTOR AND TIMING CHAIN WERE BOTH REPLACED TWICE. IN ADDITION, THE ENGINE CONSUMED A LARGE AMOUNT OF OIL WITHIN A SHORT PERIOD OF TIME. THE TECHNICIAN RECOMMENDED THE ENGINE BE REPLACED. THE VEHICLE WAS CURRENTLY AT THE DEALER FOR REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 40,000.

- Online Complaint:  We purchased my 2010 [Chevrolet] Equinox 1LT AWD in November 2009 and I've been very happy with the vehicle until around 5 months ago when my engine woes began. I can see from a quick Google that I'm far from alone in this, and I'm wondering if anyone has gotten a positive resolution from GM on it?

  At around 32K miles the engine started running rough and loud (it sounds like an old diesel!), the tach would surge and the car would shake at stoplights when in gear with my foot on the brake (if I shift it into neutral the surging eases), and then in short order the engine started randomly stalling/dying on me at stops and mid-turn. My check engine light came on, I took it in, and the dealership told me that I had an issue with a cam follower. Since I was close to being due for an oil change they did that too, but did not mention the engine oil being particularly low.

  At 34K miles (around 2 months later), the problem came back, this time with no CEL. I brought it to the same

dealership and was told by the tech and service advisor that I was low on oil and they had to add 4 quarts! The problems immediately went away with the addition. I asked how the hell my engine could be burning/leaking that much oil in such a short time and they admitted they were baffled as well. They said that if the problem recurred they'd recommend an oil consumption test.

You guessed it - at 36,200 miles this behavior started up again suddenly again with no CEL. I was thinking that it'd be my crummy luck to have it recur right after my warranty ran out and of course that's exactly what happened. I checked my oil just now and the damned dipstick is DRY. I guess I'm headed to the store at lunch to buy a couple of quarts of 5W-30.

I park in the same area of our driveway at home and in the same parking space each day at work, and there has never been so much as a drop of oil on the ground - 4 quarts should make a big puddle if it's leaking. I can only assume the engine is burning oil in a big way. I suspect that the dealership waited it out until they knew my car would be off warranty and they could charge us for what I'm sure will be a costly repair. It hasn't been 36 months yet but we are past 36K miles.

I guess it's time for an oil consumption test at the stealership, but have any other Equinox owners gotten past that and found out what the actual problem is? Does the powertrain warranty cover whatever has to be done?

I have to say that I love my Equinox as a car, aside from these issues. It's roomy, it handles nicely, it's a great family vehicle. What terrifies me is the engine stalling the way it does with no warning - we have a toddler who rides with me daily and my heart jumps into my throat every time we stall, especially when our daughter is in the car.

- Online Complaint:  We purchased this [Chevrolet Equinox 2LT 2.4L] on 08/26/2010 new, on 12/13/2010, the car had a strong ticking sound so I checked the engine oil and we discovered that the dipstick was completely dry, we added a quart of oil and still was not registering on the dipstick

We had service at the Lannan Chevrolet in Woburn Ma. On 12/14/2010, the service personnel were rude and not helpful when we showed concern. They checked the oil level found that it was 2 quarts lower with the quarts that I added the day before service.

On January, 9/2011, less than one month from the last service, the dipstick is now half way down, using more gas and the ticking is louder

19

CLASS ACTION COMPLAINT

- <u>Online Complaint</u>:  Last year I purchased a used 2010 Chevy Equinox with the 4 cylinder motor. while driving in Phoenix I checked the oil level.It was right up. I checked it 600 miles later and found it took 2 quarts of oil to return the dipstick to full. It does not leak a drop, so it burned it. the car has 27000 miles on it. the engine sounds like a 53 mercedes diesel. very embarrasing at stop lights. gm is running an oil consuption test, now anyone else have similar problems? yesterday i went to the chev dealer in my home town they had another equinox same year same mileage did not make a sound when running. strange hey

- <u>Online Complaint</u>:   My husband and I bought a certified used 2011 Chevrolet equinox. Probably one of the worst decisions ever, however hein sight is always 20 20. Recently the car has been running tough at idle. It will loose rpm and then it will recover and rev way up. The ses light never came on. Also when stopped the vehicle wants to lerch forward. We took our car into the dealership where we purchased the vehicle and have done all maintenance and come to find out there was only 1qt of oil remaining in the oil pan. The vehicle needs 5qts at all time to keep the engine operating. The vehicle did have knock sensor codes now here is where it gets really good. Our vehicle has an extended warranty, in addition we had a chevy care plan where it covered oil changes for the first two years of ownership. The dealership has been the only one to work on this car we paid $119.34 for a oil change and for them to tell us everything I just posted. THEY DID NOTHING TO FIX THE PROBLEM... According to the dealership the warranty does not cover low oil issues and until they can pin point the exact problem of where we are burning oil the warranty does not cover. We have taken the vehicle in for scheduled maintenance on time and even early where we were turned away because it was not at a certain percentage now tell me something is not right here. In addition there is no warning lights to alert the driver you are out of oil or low on oil so who knows what kind of damage has been done to my engine... Also reading other posts this is not just a one car problem there has been many cases of people burning oil and engine problems so why is nothing being done to fix this?????

- <u>Online Complaint</u>:   I bought a 2012 certified preowned Chevy Equinox with 50,000 miles. After I drove it for 3,000 miles I had to take it to the dealer due to an engine noise which turned out to be a low oil level. They changed the oil and then told me that it's normal for these engines to burn a lot of oil. I drove it for 2,000 miles after the oil change and the oil level was low again. I took it back to the dealer and they topped off the oil and told me to come back after 1000 miles for an oil consumption test.

I don't know much about cars but burning through that much oil does not seem normal to me.

CLASS ACTION COMPLAINT

My question is, how can I make the dealer take responsibility for this car oil issues while it is still under warranty?

Is it normal for these engines to consume high amounts of oil and for me to keep replacing about 3 quarts every 3,000 miles?

- Online Complaint: I too have a 2010 2.4 [GMC] terrain, I never seemed to make it through 3,000 mile intervals without my car starting to sound pretty horrible, and it would only have about 1.5 - 2 quarts of oil drained out.. ever since I got it brand new in Oct/2009, it's been this way. My car now has 67,000 miles, and it has died approx. 5+ times due to carbon build up. Sept/2012 I had the carbon clean out service done that I'm supposedly supposed to have (so that wasn't a warranty item), and then my car died again in Dec/2012.. I took it back to the dealer, and they called to say i needed a carbon clean out done. I reminded them that they just did it 3 months prior.. So they did that under warranty and said they'd start my oil consumption test. I hit my first 1,000 miles and was a quart low.. My boyfriend checked the oil level over that same weekend, and found the oil level 4 inches above the 5 quart mark....... 🙂 (Picture attached) - I gathered up all of my repair invoices from everything I had, wrote down main points to discuss, etc.. I went in this past Friday and it was just a matter of telling the service manager that I have oil consumption issues, and asking what exactly the procedure was & was supposed to do.. To my complete surprise the service manager told me that he will definitely get my car fixed, whether the engine needs repairs or to be replaced.. Or if I am just plain sick & tired of the issues, that he'd help get me a pretty awesome trade assist value. The guy couldn't have been nicer, and totally understandable. Although he said that oil consumption wasn't generally an issue 😊 I am waiting for a call today in regards to what kind of numbers I am looking at for a 2013 Terrain.. If I don't agree, I guess I will be getting a new engine instead. 😉

- Online Complaint: We just bought a 2010 [GMC] Terrain 2.4l this past fall. At Christmas i had an oil change done to the suv. A month later i heard knocking on the engine and when I went to check the oil there was about 1 litre left. I thought it was the service center that did not do the oil change and I got scammed. So i did an oil change myself. This was about a month ago. I checked my oil again two days ago and I noticed that I lost almost 2 liters of oil. No leaks, no oil on the floor. What should i do? should I take it to the dealer? Is there someone at GM I can contact to start a file? I think i might have made a big mistake in going back to GM Cars......

CLASS ACTION COMPLAINT

- Online Complaint: Looks like I am having to jump on the oil consumption band wagon.

  I have a 2010 [GMC] Terrain with a little over 60,000 miles on it. Noticed the hard idle at stops and it got to the point it was dying during idle. Check the oil - barely anything in it. Took it to the dealer, they changed the oil about 3 weeks ago. It's been 1800 miles and it's already burned through 4 qts. Take it up to the dealer again today, and GM (not the dealer) wants to do another oil consumption test.

  I'm wondering reading through the posts how many times I am going to have to do these oil consumption tests...... This is very frustrating.

- Online Complaint: Hello everyone.  I've been reading about the issues people have been reporting with oil consumption. I have a 2010 [GMC] Terrain with about 97k miles on it. The this morning I noticed it not sounding as it normall has. The engine sounded rough at idle and under acceleration. When I got home, I checked the oil and it wasn't even registering on the dipstick.  I've been very consistent about oil changes according to the car's computer, and even had the recall performed where the computer was updated for the oil monitoring system.  I'm very concerned that I may have a major problem and I want to get it addressed before my power train warranty expires.  How should I proceed and what do I need to say to my dealer to get the ball rolling on this?

- Online Complaint:  Hello everyone! I wanted to post this to see if anyone else has had (or is having) the same problem I am with their Terrain or Equinox.

  I took delivery of my [2010 GMC] Terrain in December, after waiting about 8 weeks from the order order date (in case anyone was wondering). I love the vehicle, except I haven't been pleased with the fuel economy I was getting.

  At about 1200 miles the engine started making a knocking noise under light throttle, but would go away after being warmed up. I took it in, and they replaced some Acutator Sensor and said the oil was about a quart or two low. They said that it may not have been prepped completely before delivery, which seemed a little odd, but I went with it.

  Well, at about 2500 miles, the noise started happening again. I checked the oil myself, and the dipstick was bone dry. I took it to the dealership, and they put 3 quarts in last Monday. One week later (and less than 400 miles), I am once again about 2 quarts low...........

  I do not see or smell anything from the exhaust except for some black "carbon-like" splattering on my garage floor where the exhaust pipe is.

22

CLASS ACTION COMPLAINT

Needless to say, I'm getting worried. They will be looking at it tomorrow, but I was hoping to see if anyone out there has any insight or experience with this.

Thanks in advance for your replies!

32.     Despite its knowledge of the oil consumption engine defect, when owners or lessees of Class Vehicles specifically complained to Defendant about the oil consumption engine defect, Defendant's policy is to first deny that there is a known problem and to assert that losing abnormally high amount of oil is normal.

33.     Customers have reported the oil consumption engine defect in the Class Vehicles to Defendant directly and through its dealers.  Defendant is fully aware of the oil consumption engine defect contained in the Class Vehicles. Despite this, Defendant has failed to disclose and actively concealed the existence and nature of the defect from Plaintiff and the other Class Members at the time of purchase and thereafter.  Specifically, Defendant has:

> (a)     failed to disclose, at the time of purchase and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the oil consumption engine defect and, among other things, the frequent supplemental oil costs between regularly scheduled oil changes, as well as repairs that can cost in the thousands of dollars;
>
> (b)     failed to disclose, at the time of purchase and thereafter, that the Class Vehicles and their engines were not in good working order, were defective, and were not fit for their intended purpose; and
>
> (c)     failed to disclose or actively concealed, at the time of purchase and thereafter, the fact that the Class Vehicles and their engines were defective as a result of the oil consumption

23

engine defect, despite the fact that Defendant learned of such
defects prior to the first Class Vehicles being sold.

34.     Defendant has caused Plaintiff and the other Class Members to
expend money at its dealerships or other third-party repair facilities and/or take
other remedial measures related to the oil consumption engine defect in the Class
Vehicles, such as carrying containers of oil with them at all times, which they
did not expect to have to do when they purchased or leased the Class Vehicles.

35.     Defendant has not recalled the Class Vehicles to repair the defective
engines and their oil consumption engine defect, and has not offered to
reimburse Class Vehicle owners and leaseholders who incurred costs relating to
excessive oil consumption and related problems.

36.     Plaintiff and the other Class Members are reasonable consumers
who do not expect their vehicle to require unreasonably frequent oil changes
and/or additions after very short driving distances, as well as costly engine
repairs/replacements that can cost thousands of dollars in order to repair the
defect.   Plaintiff and the other Class Members also expect and assume that
Defendant will not sell or lease vehicles with known defects, such as the oil
consumption engine defect, and will disclose any such defects to its consumers
before they purchase the Class Vehicles.  They do not expect Defendant to fail to
disclose the oil consumption engine defect to them, or to continually deny the
existence of the defect.

37.     Consequently, Class Members have not received the value for which
they bargained when they purchased or leased the Class Vehicles.

38.     As a result of the oil consumption engine defect, the value of the
Class Vehicles has diminished, including without limitation the resale value of
the Class Vehicles.

**Plaintiff Parenteau's Experiences**

39.     Plaintiff William Parenteau is a California resident.

24

40.     On or about October 26, 2010, Mr. Parenteau purchased a new 2011 Chevrolet Equinox LT equipped with a 2.4L engine from a dealer in California. Mr. Parenteau purchased this vehicle primarily for his personal, family, or household purposes.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Defendant.

41.     Prior to purchasing the subject vehicle, Mr. Parenteau was exposed to various information, including GM's television campaign, spoke to GM's dealer sales representative who upon information and belief receive from GM training materials about, among other things, the various attributes of the GM vehicles, and reviewed the sticker that was on the subject vehicle.  All the information that Plaintiff saw and the individual who he spoke with prior to purchasing the subject vehicle failed to disclose to him that the subject vehicles suffer from the oil consumption engine defect alleged herein.  Had GM disclosed its knowledge of the defect when he purchased the subject vehicle, Plaintiff would have seen such disclosures and been aware of them, and like all Class Members would have not purchased the subject vehicle or would have paid less for it.

42.     Mr. Parenteau relied on the existence and length of Defendant's express warranties, including Defendant's 5-year/100,000-mile powertrain warranty, which, among other items, covers the engine for the Class Vehicles.

43.     As a result of the oil consumption engine defect alleged herein and GM's refusal to fix it, Mr. Parenteau on multiple occasions has complained to the dealer about the excessive oil consumption and repeatedly paid out of pocket to add oil to the subject vehicle, including during the warranty period.

44.     By way of example only, on or about May 29, 2013, Mr. Parenteau took his vehicle (with approximately 32,567 miles on the odometer) to Bob Stall Chevrolet in La Mesa, California, and complained that his vehicle was again low on oil since his last oil and filter change.  Instead of conducting repairs, however,

the dealer merely changed his filter and added oil, at an out-of-pocket cost to Mr. Parenteau of $41.82.  Additionally, the dealer commenced an "oil consumption test" and told Mr. Parenteau to return to the dealer after 1,000 miles to complete the test.

45.    On or about June 28, 2013, Mr. Parenteau returned to the dealer (with approximately 33,598 miles on the odometer) to perform another round of the oil consumption test.  Instead of conducting repairs, however, the dealer merely topped off the subject vehicle's oil and told Mr. Parenteau to again return in another 1,000 miles.

46.    On or about July 24, 2013, Mr. Parenteau again returned to the dealer (with approximately 34,744 miles on the odometer) to complete another round of the oil consumption test.  After conducting the test, the dealer concluded that "no oil [was] needed" because the "oil level was full."

47.    On or about August 29, 2013, Mr. Parenteau again took his vehicle (with approximately 35,715 miles on the odometer) to the dealer, complaining that it was consuming an excessive amount of oil.  The dealer verified Plaintiff's concern by indicating on the repair order that the "vehicle was not reading oil on the dipstick."  According to GM's TSB, "no oil will appear on the dipstick if [the vehicle] is low on oil by approximately *1.25 quarts [] or more*." (Emphasis added.) Further, the TSB provides that "[i]f the oil consumption test indicated that the rate of consumption *is greater than 1 quart [] of oil every 2,000 miles*," pistons and rings need to be replaced. (Emphasis added.)

48.    Although between June 28, 2013 to August 29, 2013, Plaintiff's vehicle had consumed 1.25 quarts or more of oil after 2,117 miles of driving (*i.e.*, approximately 1.18 quarts or more of oil after 2,000 miles of driving), GM's dealer failed to conduct any of the TSB-mandated engine repairs under warranty.  Instead, the dealer added one quart of oil to Mr. Parenteau's vehicle and informed him that "vehicle is now on spec."

26

49.     At all times, Mr. Parenteau, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## TOLLING OF THE STATUTE OF LIMITATIONS

50.     Because the defects in the design or manufacture of the Class Vehicles and their engines cannot be detected until the vehicle has been driven and begins to consume excessive oil, Plaintiff and the other Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

51.     Plaintiff and the other Class Members had no realistic ability to discern that the Class Vehicles and their engines are defective until at the earliest when the oil consumption engine defect was verified by the dealer.  In addition, despite their due diligence, Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their oil consumption issues was concealed from them.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the other Class Members.

52.     In addition, even after Class Members contacted Defendant and/or its authorized dealers for vehicle repairs concerning the defective nature of the Class Vehicles, Plaintiff and the other Class Members were routinely told by Defendant and/or through its dealers that the Class Vehicles are not defective and that consumption of high amounts of oil after a short distances of driving is a normal condition.

53.     Therefore, any applicable statute of limitation has been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein.  Defendant is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their engines.

1

## CLASS ACTION ALLEGATIONS

2      54.    Plaintiff brings this lawsuit as a class action on behalf of himself

3 and all others similarly situated as members of the proposed Plaintiff Class

4 pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and/or (b)(2).  This

5 action satisfies the numerosity, commonality, typicality, adequacy,

6 predominance, and superiority requirements of those provisions.

7      55.    The Class and Sub-Class are defined as:[5]

8     Nationwide Class:      All current and former owners or lessees
9                             in the United States who at any time
10                             purchased or leased any 2010-2013 GM
                            vehicles equipped with a 2.4 LG engine,
11                             including but not limited to any 2010-2013
                            Buick LaCrosse, 2011-2013 Buick Regal,
12                             2010-2013 Chevrolet Equinox, or 2010-
13                             2013 GMC Terrain vehicle.

14     California Sub-Class:      All Members of the Nationwide Class who
15                             purchased or leased their vehicles in the
                            State of California.

16

17      56.    Excluded from the Class and Sub-Class are: (1) Excluded from this

18 definition are those Vehicles that were manufactured by the former General

19 Motors Corporation ("Old GM") before July 11, 2009; (2) Defendant, any entity

20 or division in which Defendant has a controlling interest, and its legal

21 representatives, officers, directors, assigns, and successors; (3) the Judge to

22 whom this case is assigned and the Judge's staff; and (4) those persons who have

23 suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves

24 the right to amend the Class and Sub-Class definitions if, *inter alia*, discovery

25 and further investigation reveal that the Class and Sub-Class should be expanded

26 or otherwise modified.

27            [5] Plaintiff reserves the right to amend or add to the vehicle models
28 included in the definition of Class Vehicles after conducting discovery.

57.   <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from other sources.

58.   <u>Typicality</u>: The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, purchased and leased a Class Vehicle designed, manufactured, and distributed by Defendant, in which the engine was defective.  The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of engine repairs and cost of purchasing extra motor oil to replace the oil consumed by the defective engine. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

59.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

(a)   whether the Class Vehicles and their engines are defectively designed or manufactured such that they are not suitable for their intended use;

(b)   whether the fact that the Class Vehicles suffer from an oil consumption engine defect would be considered material to a reasonable consumer;

(c)   whether as a result of Defendant's concealment or failure to

29

disclose material facts, Plaintiff and the other Class Members acted to their detriment by purchasing Class Vehicles manufactured by Defendant;

(d)   whether Defendant was aware of the oil consumption engine defect;

(e)   whether the oil consumption engine defect constitutes an unreasonable safety risk;

(f)   whether Defendant breached the express and implied warranties with respect to the Class Vehicles;

(g)   whether Defendant has a duty to disclose the defective nature of the Class Vehicles and their oil consumption engine defect to Plaintiff and the other Class Members;

(h)   whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

(i)   whether Defendant violated the consumer protection statutes of California when they sold to consumer Class Vehicles that suffered from the oil consumption engine defect.

60.   Adequate Representation:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

61.   Predominance and Superiority: Plaintiff and the other Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no

30

1   effective remedy at law.  Because of the relatively small size of the individual

2   Class Members' claims, it is likely that only a few Class Members could afford

3   to seek legal redress for Defendant's misconduct.  Absent a class action, Class

4   Members will continue to incur damages, and Defendant's misconduct will

5   continue without remedy.  Class treatment of common questions of law and fact

6   would also be a superior method to multiple individual actions or piecemeal

7   litigation in that class treatment will conserve the resources of the courts and the

8   litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### (Violation of California's Consumer Legal Remedies Act,

### California Civil Code § 1750 *et seq.*)

12   62.     Plaintiff hereby incorporates by reference the allegations contained

13   in the preceding paragraphs of this Complaint.

14   63.     Plaintiff brings this cause of action on behalf of himself and on

15   behalf of the members of the Nationwide Class, or, in the alternative, on behalf

16   of the members of the California Sub-Class against Defendant.

17   64.     Defendant is a "person" as defined by California Civil Code §

18   1761(c).

19   65.     Plaintiff and the other Class Members are "consumers" within the

20   meaning of California Civil Code § 1761(d).

21   66.     By failing to disclose and concealing the defective nature of the

22   Class Vehicles and their engines with respect to the oil consumption engine

23   defect from Plaintiff and prospective Class Members, Defendant violated

24   California Civil Code § 1770(a), as it represented that the Class Vehicles and

25   their engines had characteristics and benefits that they do not have, and

26   represented that the Class Vehicles and their engines were of a particular

27   standard, quality, or grade, when they were of another.  *See* Cal. Civ. Code §§

28   1770(a)(5) & (7).

67.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

68.     Defendant knew that its Class Vehicles and their engines suffered from an inherent defect because they were prone to consuming abnormally high amounts of oil, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

69.     Defendant was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles and their engines and/or the associated costs because:

(a)     Defendant was in a superior position to know the true state of facts about the safety defects contained in the Class Vehicles and their engines;

(b)     Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their engines have a dangerous safety defect that causes them to consume abnormally high amounts of oil until after they purchased the Class Vehicles and not until they had the oil consumption engine defect verified by the dealer; and

(c)     Defendant knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the safety defect.

70.     In failing to disclose the oil consumption engine defect contained in the Class Vehicles and their engines, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

71.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have

32

1  considered them to be important in deciding whether or not to purchase the Class

2  Vehicles, or to pay less for them.  Had Plaintiff and the other Class Members

3  known that the Class Vehicles suffer from an oil consumption engine defect,

4  they would not have purchased the Class Vehicles or would have paid less for

5  them.

6         72.    Plaintiff and the other Class Members are reasonable consumers

7  who do not expect their engines to consume substantial amounts of oil requiring

8  addition and/or change of oil after very short driving distances. Plaintiff and the

9  other Class Members do not expect to have to purchase and add costly motor oil

10  repeatedly and after very short driving distances and Plaintiff further expects and

11  assumes that Defendant will not sell or lease vehicles with known material safety

12  defects, such as the oil consumption engine defect, and will disclose any such

13  defect to their consumers when it learns of the defect.

14         73.    As a result of Defendant's misconduct, Plaintiff and the other Class

15  Members have been harmed and have suffered actual damages.

16         74.    Plaintiff and the other Class Members are also entitled to statutory

17  damages, injunctive and equitable relief, as well as damages for actual repairs to

18  the Class Vehicles to remedy the oil consumption engine defect.

19         75.    Plaintiff, on behalf of all consumers in the United States, has

20  provided Defendant with notice of its alleged violations of the CLRA pursuant to

21  California Civil Code section 1782(a).  If, within 30 days, Defendant fails to

22  provide appropriate relief for its violations of the CLRA, Plaintiff will amend

23  this Complaint to seek monetary, compensatory, and punitive damages, in

24  addition to the injunctive and equitable relief that he seeks now.

25                        **SECOND CAUSE OF ACTION**

26      **(Violation of California Business & Professions Code §§ 17200 *et seq.*)**

27         76.    Plaintiff hereby incorporates by reference the allegations contained

28  in the preceding paragraphs of this Complaint.

33

77.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against Defendant.

78.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

79.     Defendant knew that the Class Vehicles and their engines suffered from an inherent defect that caused them to consume unusually high amounts of oil, were defectively designed or manufactured, and were not suitable for their intended use.

80.     In failing to disclose the oil consumption engine defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

81.     Defendant was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles and their engines because:

>   (a)     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles and their engines;
>
>   (b)     Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their engines; and
>
>   (c)     Defendant actively concealed the defective nature of the Class Vehicles and their engines from Plaintiff and Class Members.

82.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase Defendant's Class Vehicles, or to pay less for them.  Had Plaintiff and the other

34

Class Members known that the Class Vehicles and their engines suffered from an oil consumption engine defect, they would not have purchased the Class Vehicles or would have paid less for them.

83.     Defendant continued to conceal the defective nature of the Class Vehicles and their oil consumption engine defect even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem by asserting that losing quarts and quarts of oil between regularly scheduled oil changes is normal.

84.     By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

85.     Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.  Indeed, Defendant's failure to disclose the safety consequences of the defect alleged herein is unfair.

86.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and Class Members have suffered damages.

87.     Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to, among other sections, sections 17203 and 17204 of the Business & Professions Code.

### THIRD CAUSE OF ACTION
### (Fraud by Omission)

88.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against Defendant.

CLASS ACTION COMPLAINT

1    90.    Defendant knew that the Class Vehicles and their engines suffered
2    from an inherent defect that caused them to consume unusually high amounts of
3    oil, were defectively designed or manufactured, and were not suitable for their
4    intended use.
5    91.    Defendant concealed from and failed to disclose to Plaintiff and the
6    Class the defective nature of the Class Vehicles and their engines.
7    92.    Defendant was under a duty to Plaintiff and the Class to disclose the
8    defective nature of the Class Vehicles and their engines because:
9           (a)    Defendant was in a superior position to know the true state of
10                 facts about the material defects in the Class Vehicles and their
11                 engines;
12          (b)    Defendant made partial disclosures about the quality of the
13                 Class Vehicles without revealing the defective nature of the
14                 Class Vehicles and their engines; and
15          (c)    Defendant actively concealed the defective nature of the Class
16                 Vehicles and their engines from Plaintiff and Class Members.
17   93.    The facts concealed or not disclosed by Defendant to Plaintiff and
18   the other Class Members are material in that a reasonable person would have
19   considered them to be important in deciding whether to purchase Defendant's
20   Class Vehicles or pay a lesser price for these vehicles.  Had Plaintiff and the
21   other Class Members known the defective nature of the Class Vehicles and their
22   engines, they would not have purchased the Class Vehicles or would have paid
23   less for them.
24   94.    Defendant concealed or failed to disclose the true nature of the
25   design or manufacturing defects contained in the Class Vehicles and their
26   engines in order to induce Plaintiff and the other Class Members to act thereon.
27   Plaintiff and the other Class Members justifiably relied on the omission to their
28

CLASS ACTION COMPLAINT

detriment.  This detriment is evident from Plaintiff's and the other Class Members' purchase or lease of Defendant's Class Vehicles.

95.    Defendant continued to conceal the defective nature of the Class Vehicles and their engines even after the Class Members began to report the problems.

96.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class have suffered and will continue to suffer actual damages.

**FOURTH CAUSE OF ACTION**

**(Breach of Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)**

97.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

98.    Plaintiff brings this action on behalf of himself and on behalf of the Nationwide Class against Defendant.

99.    Plaintiff and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

100.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

101.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

102.   Defendant's New Vehicle Limited 3-year/36,000-mile Basic Warranty and 5-year/100,000-mile Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

103.   Defendant breached the express warranties by:

      (a)    extending a 3-year/36,000-mile Basic Warranty[6] and a 5–

---

[6] The Basic Warranty "covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period [of 36 months/36,000 miles]."

year/100,000–mile Powertrain Warranty[7] with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

(b) selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

(c) refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts.

104.   Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

105.   Defendant's breach of the express warranties has deprived the Plaintiff and the other Class Members of the benefit of their bargain.

106.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

107.   Defendant has been afforded a reasonable opportunity to cure its breach of written warranty and/or Plaintiff and the other Class Members were not required to do so, because affording Defendant a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was also on notice of the alleged defect from the complaints and service request it

---

[7] The Powertrain Warranty "covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period [of 60 months/100,000 miles]" for various components supplied by GM, including the "Engine."

CLASS ACTION COMPLAINT

1   received from Class Members, as well as from its own warranty and/or parts

2   sales data.

3       108.   As a direct and proximate cause of Defendant's breach of written

4   warranty, Plaintiff and the other Class Members sustained damages and other

5   losses in an amount to be determined at trial.  Defendant's conduct damaged

6   Plaintiff and the other Class Members, who are entitled to recover actual

7   damages, consequential damages, specific performance, diminution in value, and

8   costs, including statutory attorney fees and/or other relief as appropriate.

9                          **FIFTH CAUSE OF ACTION**

10      **(Breach of Express Warranty under Cal. Comm. Code § 2313)**

11      109.   Plaintiff hereby incorporates by reference the allegations contained

12   in the preceding paragraphs of this Complaint.

13      110.   Plaintiff brings this cause of action against Defendant on behalf of

14   himself and on behalf of the Nationwide Class or, in the alternative, the

15   California Sub-Class against Defendant.  Defendant provided all purchasers and

16   lessees of the Class Vehicles with the express warranties described herein, which

17   became part of the basis of the bargain.  Accordingly, Defendant's express

18   warranties are express warranties under California law.

19      111.   The engines and their component parts in the Class Vehicles were

20   manufactured, installed, and/or distributed by Defendant and are covered by the

21   express warranties.

22      112.   Defendant breached the express warranties by:

23          a.  extending a 3-year/36,000-mile New Vehicle Limited Basic

24              Warranty and a 5-year/100,000-mile Powertrain Warranty,

25              with the purchase or lease of the Class Vehicles, thereby

26              warranting to repair or replace any part defective in material

27              or workmanship at no cost to the owner or lessee;

28

     b.  selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

     c.  refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engines or any of their component parts affected by the oil consumption engine defect.

113.   Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

114.   Plaintiff and the other Class Members (or the prior owners/lessees of their Class Vehicles) notified Defendant of the breach within a reasonable time and/or were not required to do so.  Defendant was also on notice of the oil consumption engine defect from, among other sources, the complaints and service requests for oil consumption they received from Class Members and their dealers.

115.   As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, *i.e.*, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.  Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages related to the oil consumption engine defect described herein, including but not limited to repeated oil changes and/or additions, as well as costly repairs and .

116.   Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq.*)

117.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

118.   Plaintiff brings this cause of action against Defendant on behalf of himself and on behalf of the members of the California Sub-Class.

119.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

120.   Defendant provided Plaintiff and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale that causes the vehicles to consume an abnormally high amount of oil, *i.e.*, the oil consumption engine defect herein alleged.  Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

121.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation and would not consume abnormally high amount of oil between scheduled oil changes; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

122.   Contrary to the applicable implied warranties, the Class Vehicles and their engines, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design and/or manufacture of their engines that suffer from the oil consumption engine defect alleged herein.

123.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for ordinary use in violation of California Civil Code §§ 1792 and 1791.1.

## RELIEF REQUESTED

124.   Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendant, and accordingly requests the following:

(a)   an order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b)   a declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles and their engines and offer to reimburse Class Members any damages they have incurred in connection with the oil consumption engine defect alleged herein;

(c)   an order requiring Defendant to provide notice to all Class Members, and in the said notice requiring Defendant to (1) offer to repair without charge or any pre-condition the oil consumption engine defect contained in the subject vehicles; and (2) extend the warranty for the engines contained in the subject vehicles to at least 10 years/150,000 miles, whichever is later.

(d)  a further order enjoining Defendant from the conduct alleged herein, including an order enjoining Defendant from concealing the existence of the oil consumption engine defect during distribution, sales, and advertisement of, and during customer and warranty service visits for, the Class Vehicles;

(e)  an award to Plaintiff and the Class Members of compensatory, actual, exemplary, and statutory damages, except that for now, Plaintiff seeks only equitable and injunctive relief from Defendant with respect to his claims under California's Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.*;

(f)  a declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiff and the other Class Members;

(g)  an award of attorneys' fees and costs, as allowed by law;

(h)  an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(i)  an award of pre-judgment and post-judgment interest, as provided by law;

(j)  any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code § 1794;

(k)  leave to amend the Complaint to conform to the evidence produced at trial; and

(l)  Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

125.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 25, 2014                    Respectfully submitted,

                                        STRATEGIC LEGAL PRACTICES, APC

                                        By: Karen E. Nakon

                                        Attorneys for Plaintiff William Parenteau

# EXHIBIT 1

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Larry Chae (SBN 268979)
lchae@slpattorney.com
Karen Nakon (SBN 278423)
knakon@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Attorneys for Plaintiff William Parenteau

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PARENTEAU, individually, and on behalf of a class of similarly situated individuals,<br><br>          Plaintiff,<br><br>     vs.<br><br>GENERAL MOTORS, LLC,<br><br>          Defendant. | CASE NO.<br><br>**DECLARATION OF PAYAM SHAHIAN IN SUPPORT OF PLAINTIFF WILLIAM PARENTEAU'S SELECTION OF FORUM** |

## **DECLARATION OF PAYAM SHAHIAN**

I, Payam Shahian, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court.  I am a member of the law corporation, Strategic Legal Practices, APC, counsel of record for Plaintiff William Parenteau in this action.  The following facts are within my personal knowledge, and if called as a witness, I could and would competently testify thereto.

2.      To the extent required, pursuant to Cal. Civ. Code § 1780(d), this Declaration is submitted in support of Plaintiff's selection of forum for trial of Plaintiff's cause of action alleging violation of California's Consumer Legal Remedies Act.

3.      To the best of my knowledge, based on information and belief, Defendant General Motors, LLC, ("GM") is a corporation registered with the California Department of Corporations to conduct business in California.  It maintains a regional office/distributorship in this district, Ventura County, California and conducts business in this district.

4.      At all times relevant, GM was engaged in the business of marketing, distributing, and selling the Class Vehicles and other motor vehicles and motor vehicle components in this district.


I declare under penalty of perjury that the foregoing is true and correct. Executed on June 25, 2014, at Los Angeles, California.

Dated:  June 25, 2014                          Respectfully submitted,

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Payam Shahian
      Payam Shahian
      Strategic Legal Practices, APC
      Attorneys for Plaintiff William
      Parenteau

DECLARATION OF PAYAM SHAHIAN IN SUPPORT OF PLAINTIFF WILLIAM
PARENTEAU'S SELECTION OF FORUM

ORIGINAL

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| WILLIAM PARENTEAU, individually, and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) |
| _____<br>*Plaintiff(s)*<br>v.<br>GENERAL MOTORS, LLC;<br>_____<br>*Defendant(s)* | ) Civil Action No. **CV14-04961-CAS(MANx)** ) ) ) ) ) ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   General Motors, LLC
                                     300 Renaissance Center
                                     Detroit, Michigan 48265
                                     c/o CSC - Lawyers Incorporating Service
                                     2710 Gateway Oaks Drive, Suite 150N
                                     Sacramento, California 95833

     A lawsuit has been filed against you.

     Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Payam Shahian (SBN 228406), Larry Chae (SBN 268979)
                                       Karen Nakon (SBN 278423)
                                       STRATEGIC LEGAL PRACTICES, APC
                                       1875 Century Park East, Suite 700
                                       Los Angeles, California 90067
                                     Telephone:  (310) 277-1040
                                     Facsimile:  (310) 943-3838

     If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                                *CLERK OF COURT*

Date:  6/25/2014
                                           _____
                                           *Signature of Clerk or Deputy Clerk*

                                                                     1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| WILLIAM PARENTEAU, individually, and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff(s)* | ) ) | Civil Action No. |
| v. | ) | |
| GENERAL MOTORS, LLC; | ) ) | **CV14-04961 · CAS(MANx)** |
| *Defendant(s)* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    General Motors, LLC
300 Renaissance Center
Detroit, Michigan 48265
c/o CSC - Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Payam Shahian (SBN 228406), Larry Chae (SBN 268979)
Karen Nakon (SBN 278423)
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

ANDRES PEDRO

Date: 6/25/2014

*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: